ROBERT H. GAULI, PETITIONER-APPELLANT, v. THE BOARD OF TRUSTEES OF THE POLICE AND FIREMEN'S RETIREMENT SYSTEM, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 14, 1976—Decided August 10, 1976.

Before Judges FRITZ, SEIDMAN and MILMED.

*Mr. John H. Ratliff* argued the cause for appellant (*Messrs. Margolis & Bergstein,* attorneys).

*Mrs. Erminie L. Conley,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Samuel J. Halpern,* Deputy Attorney General, on the brief).

PER CURIAM. There is no longer any question but that a condition of "honorable service" is impliedly prerequisite to the pension benefits provided for certain public servants by *N. J. S. A.* 43:16A–6. *Hozer v. State, etc., Police & Firemen's Pension Fund,* 95 *N. J. Super.* 196, 199–200 (App.

Div. 1967), certif. den. 50 *N. J.* 285 (1967). The sole meritorious question confronting us in this particular case is whether conviction of the crime of unlawful possession of a weapon (*N. J. S. A.* 2A:151–41), in and of itself, sufficiently denotes service less than honorable and to a degree precluding such benefits. Unlike the hearing officer below, we answer that question in the negative.

We do not view lightly the commission of any crime. We have no doubt that conviction on criminal charges might well justify denial of a pension. *Fromm v. Bd. Directors of Police, etc., Retirem. Syst.*, 81 *N. J. Super.* 138 (App. Div. 1963). In fact, "a willful flouting of departmental authority and discipline" constituting less than a crime is said to have a capability for producing that result. *Plunkett v. Hoboken Pension Comm'rs*, 113 *N. J. L.* 230, 234 (Sup. Ct. 1934), aff'd o. b. 114 *N. J. L.* 273 (E. & A. 1935). And see, *Pfitzinger v. Bd. of Trustees, etc., Retirem. Syst.*, 62 *N. J. Super.* 589 (Law Div. 1960).

█ Generally, condemnation of the inculpatory act sufficient to warrant disenfranchisement of pension rights is found in cases where the conduct touches the administration of the employee's office or position (*Hozer* and *Fromm*, both *supra*) or where the conduct is said to involve moral turpitude (*Ballurio v. Castellini*, 29 *N. J. Super.* 383 (App. Div. 1954)). In the matter before us the crime did not involve the employee's position. The inquiry then becomes whether the crime involved moral turpitude.

█ The hearing officer below decided, as a matter of law, without reference to the facts surrounding the offense and, as a matter of fact, deeming it not "necessary to make formal findings of fact,"[1] that petitioner's "plea of guilty to a

---

[1]Before the hearing officer counsel for the petitioner offered to prove, among other things, that petitioner had an unblemished record for service; that he and his young wife were alcoholics who had sought help in Alcoholics Anonymous; that in connection with an operation he was put on a regimen of tranquilizers which were "for

charge categorized as a high misdemeanor * * * forfeited his entitlement to said pension." We believe that such a plea does not in and of itself admit to moral turpitude or less than "honorable service," nor mandate the forfeiture of a pension. Despite the confession of illegal activity, the circumstances of that activity should be viewed to determine if they are of such a nature as to imply dishonorable service and invoke the extreme sanction.

Guidelines for a determination with respect to moral turpitude, after essential findings of fact, may be found in our opinion in *State Bd. of Medical Examiners v. Weiner,* 68 *N. J. Super.* 468, 483 (App. Div. 1961), and the several cases and other authorities cited therein. Perhaps its real lesson is to be found in its acknowledgment of "the elasticity of the phrase and its necessarily adaptive character," and in its suggestion that its application be "reflective at all times of the common moral sense prevailing throughout the community." 68 *N. J. Super.* at 484.

Nor do we see any reason why we should not entrust to the administrative agency the determination as to whether moral turpitude is, in all the circumstances of a given case, involved in the crime. *State, Div. of Alcohol Bev. Control v. McNally,* 91 *N. J. Super.* 513 (App. Div. 1966), certif. den. 48 *N. J.* 351 (1966).

Accordingly, we reverse and remand for a plenary hearing, consistent with the foregoing, at which petitioner shall be

---

him * * * what the alcohol was to an alcoholic"; that he was a "man with a low frustration tolerance" who "had been under control for so long" and for whom suddenly "things went steadily downhill" until "[h]is condition became so bad that one night after having drunk for several nights, he took a gun from his home which had been given to him by his brother, an antique gun, from the first World War that is, and he was thinking of killing himself, he put the gun in the trunk and drove off and conducted a drinking bout that night. Some time that night he was arrested and in a highly intoxicated state * * *."

The hearing officer, convinced that petitioner was "trying to make the issue a factual one whereas I believe that the issue is a legal one," accepted no testimony in this respect.

permitted to offer proof relating to the circumstances involved in the crime which he his admitted. The ultimate determination should contain detailed findings of fact upon which its conclusions of law are bottomed.

Reversed and remanded. We do not retain jurisdiction.